# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## <u>LETTER OPINION</u>

February 9, 2009

David J. Cohen
Saltz Mongeluzzi Barrett & Bendesky
1650 Market Street
52nd Floor
Philadelphia, Pennsylvania 19103

    (*Attorney for Plaintiff*s)

Jeffrey Speiser
Joel M. Silverstein
Michael Dinger
Stern & Kilcullen
75 Livingston Avenue
Roseland, New Jersey 07068

David H. Wollmuth
Frederick Reid Kessler
Wollmuth, Maher & Deutsch, LLP
500 Fifth Avenue
12th Floor
New York, New York, 07102

    (*Attorneys for Defendants*)

    **RE:**   **Hale et al. v. Stryker Orthopaedics et al.**
           **<u>Civ. No. 08-3367 (WJM)</u>**

Dear Counsel:

This matter comes before the Court on the motions to dismiss filed by: (1) Defendants Stryker Orthopaedics, Stryker Corporation and Stryker Sales Corporation and (2) Defendant Smith & Nephew, Inc.  There was no oral argument. Fed. R. Civ. P. 78.  For the reasons stated below, Defendants' motions to dismiss are **GRANTED**.

## I.    BACKGROUND

Defendants are corporations involved in the manufacture of knee and hip replacement products.  Stryker Corporation is a Michigan corporation, which has its principal place of business in Michigan.  Complaint[1] ¶ 14.  Stryker Orthopaedics is a New Jersey-based division of Stryker Corporation, and Stryker Sales Corporation is a Michigan-based subsidiary.[2] Compl. ¶¶ 13, 15.  Smith & Nephew is a Delaware corporation with its principal place of business in Tennessee.  Compl. ¶ 19.

Plaintiffs are three Iowa residents – Lyle Hale, Cliff Reublin, and Stephen Wilcox – who brought this action after receiving joint implants manufactured by Defendants Stryker and Smith & Nephew.  Compl. ¶¶ 10-12.  Plaintiffs each received knee implants,[3] for which they tendered a coinsurance payment to their health insurers.

_____

[1]  Plaintiffs filed a complaint on behalf of themselves and all persons similarly situated on July 7, 2008, which Plaintiffs amended as of right on July 21, 2008. On November 18, 2008, Plaintiffs filed an second amended complaint, with leave of Magistrate Judge Mark Falk.  This second amended complaint is identical to the amended complaint on which Defendants motions are based, save for the inclusion of the precise state consumer protection laws allegedly violated by Defendants in Count Three.  Plaintiffs represented that the failure to list these statutes in Count Three of the two complaints filed was clerical error.  The issues pertinent to this motion to dismiss were present in both the amended complaint and the second amended complaint.  Both parties have briefed these issues fully. Further, Defendants did not object to Plaintiffs' motion to file the second amended complaint.  Thus, under these facts, the Court finds that neither side will be prejudiced by the Court's consideration of the second amended complaint for the purposes of this motion.  As such, the complaint referred to by the Court in this Letter Opinion will be the second amended complaint.

[2]  Defendants Stryker Orthopaedics, Stryker Corporation and Stryker Sales Corporation will be referred to collectively as "Stryker."

[3]  Plaintiff Hale received a Stryker implant during his knee replacement surgery, while Plaintiffs Reublin and Wilcox received Smith & Nephew knee implants.  Plaintiffs do not state when or where these surgeries took place.

This action stems from the findings of a criminal investigation led by the United States Department of Justice into the hip and knee replacement industry. Specifically, this federal investigation examined whether financial inducements were paid to surgeons by joint manufacturers in violation of federal anti-kickback and false claim statutes. Compl. ¶31. As a result of this investigation, Smith & Nephew entered into a Deferred Prosecution Agreement, and consented to federal monitoring for eighteen months. Compl. ¶¶2, 30. In addition, both Stryker and Smith & Nephew have entered into five-year Corporate Integrity Agreements, whereby they are required to implement additional reforms and submit to monitoring by the United States Department of Health & Human Services. Compl. ¶ 3.

Following this federal investigation, Plaintiffs filed the instant action, bringing Racketeering Influenced and Corrupt Organization ("RICO") Act, unjust enrichment, and state consumer fraud claims against Defendants. Plaintiffs claim that the coinsurance payments they tendered for their knee replacement surgeries were artificially inflated due to a collusive kickback scheme executed by Defendants. Compl. ¶¶ 39-41. As part of this kickback scheme, Defendants purportedly entered into "phony consulting agreements" with orthopedic surgeons, which were meant to buy surgeon loyalty and inflate sales of Defendants' artificial hip and knee implant devices. Compl. ¶¶ 1, 33. These payments to surgeons allegedly inflated the prices charged for the joint implants. Compl. ¶ 40-41. In turn, these increased knee and hip implant prices were passed on to hospitals and the insurance entities, including Medicare, that covered patients who received the joint implants. *Id.* Then, Medicare or the other insurance entities allegedly passed on the increased joint cost to Plaintiffs in the form of an elevated coinsurance payment. *Id.*

Defendant Stryker filed the instant motion to dismiss on August 15, 2008, and Defendant Smith & Nephew filed its own motion to dismiss on October 6, 2008. Plaintiffs filed a combined response in opposition to Defendants' motions to dismiss on October 20, 2008.

## II.   DISCUSSION

In this action, Plaintiffs assert four claims against both Defendants: (1) a civil RICO violation, under 18 U.S.C. § 1962(c); (2) a civil RICO conspiracy violation under 18 U.S.C. § 1962(d); (3) a violation of state consumer protection laws; and (4) unjust enrichment. Each claim will be addressed in turn.

### A.   Motion to Dismiss Standard

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993). All allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.,* 140 F.3d 478, 483 (3d Cir.1998). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears that no relief could be granted "under any set of facts that could be proved consistent with the allegations," a court may dismiss a complaint for failure to state a claim. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

Although a complaint need not contain detailed factual allegations, "the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level. *See id.* at 1964-65; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). Furthermore, although a court must view the allegations as true in a motion to dismiss, it is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir.2007).

### B.   Counts One and Two: RICO Claims Under Sections 1962(c),(d)

Plaintiffs assert Defendants artificially inflated the amount that Plaintiffs paid for their knee and hip[4] replacement surgeries by orchestrating an illegal kickback scheme aimed at driving demand for those devices through illicit payments to doctors.  Plaintiffs claim that this purported scheme was conducted in violation of 18 U.S.C. § 1962(c),(d).

1.   *Standing*

As a threshold matter, Defendants assert that Plaintiffs do not have standing to assert RICO claims in this action because they are not "direct purchasers" of the

---

[4] While Plaintiffs repeatedly make allegations as to a scheme orchestrated to inflate hip implant prices, none of the named Plaintiffs in this action received a hip replacement.

4

replacement joints manufactured by Defendants.  This so-called "direct purchaser" rule is a standing doctrine employed most famously in *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 744, 97 S.Ct. 2061, 2073-74, 52 L.Ed.2d 707 (1977), to bar Illinois, an indirect purchaser of concrete blocks, from bringing an antitrust claim against the concrete block manufacturers.  Rejecting the argument that Illinois – two levels down the distribution chain from the manufacturers – should be allowed to recover the fraction of the overcharge "passed on" to them, the Supreme Court noted:

> Permitting the use of pass-on theories ... essentially would transform treble-damages actions into massive efforts to apportion the recovery among all potential plaintiffs that could have absorbed part of the overcharge from direct purchasers to middlemen to ultimate consumers. However appealing this attempt to allocate the overcharge might seem in theory, it would add whole new dimensions of complexity to treble-damages suits and seriously undermine their effectiveness.

*Id.* at 737, 97 S.Ct. at 2070.

The Third Circuit has extended application of the "direct purchaser" standing rule to RICO claims. *McCarthy v. Recordex Serv. Inc.*, 80 F.3d 842, 855 (3d Cir. 1996). Since the facts of the instant case fall squarely within the Third Circuit's holding and reasoning in *McCarthy*, the Court holds that the "direct purchaser" rule bars Plaintiffs' RICO claims.

Plaintiffs, by their own pleading, are "indirect purchasers."  They do not plead that they purchased the joints used in their knee replacement surgeries directly from Plaintiffs; instead, they assert that they paid a coinsurance payment to their insurers. Compl. ¶¶ 10-12.  Understandably, Plaintiffs attempt to circumvent the "direct purchaser" rule by arguing that *McCarthy* is inapposite and that application of the rule under these facts would be unwarranted; however, these arguments are without merit.

In *McCarthy*, patients brought, *inter alia*, RICO claims alleging that several Pennsylvania hospitals and copy-service companies conspired to charge excessive fees for photocopies of patient medical records.  The individual plaintiffs in *McCarthy* did not pay for the photocopies directly; instead, the copy service billed their attorneys. *McCarthy*, 80 F.3d at 845.  The costs for the copies then would have been passed on to the individual patient-plaintiffs under their contingent fee arrangements, had they prevailed on their claims.

The Third Circuit held that the *McCarthy* plaintiffs, as indirect purchasers of the copies, did not have standing to assert their RICO claims.  Echoing the policy concerns identified by the Supreme Court in *Illinois Brick*, the Third Circuit emphasized the risk

that the defendants would be exposed to "multiple liability" if both indirect and direct purchasers in the chain of distribution were able to claim damages arising out of a single overcharge. *Id.* at 851. Related to – and exascerbating – this multiple liability risk was the "intractable problem of tracing and apportioning damages between different purchasers in the chain of distribution." *Id.* at 848. Specifically, the *McCarthy* court noted that claims asserting that a portion of an overcharge was passed on to an indirect purchaser would task the district court with performing "complex statistical calculations as to the percentage of ... costs" borne by one purchaser downstream as compared to the costs borne by subsequent purchaser(s). *Id.* at 852.

Plaintiffs attempt to distinguish *McCarthy*, arguing that the Third Circuit based its holding on a finding of no direct injury, since the copy costs were never actually passed on by the attorneys to their clients. This argument, however, reflects neither the letter nor the spirit of *McCarthy*. The nature of the fee agreement and the client's actual payment of copy costs were not the focus of the Court. Instead, "the central and dispositive issue is whether plaintiffs are 'direct purchasers.'" *Id.* at 855.

While Plaintiffs argue that they have pled direct injury since they paid artificially-inflated coinsurance payments for their surgeries, Plaintiffs have not alleged that they were direct purchasers of the replacement joints manufactured by Defendants. Between Plaintiffs and Defendants in the chain of distribution stand several actors, including the hospitals performing the joint surgeries and Plaintiffs' insurers.[5] This chain of distribution squarely presents the multiple liability and damage apportionment risks discussed in *McCarthy*. Thus, Plaintiffs' co-payment alone does not allow them to stand in the shoes of a direct purchaser for standing purposes.

---

[5] Based on these facts, it is also difficult to understand Plaintiffs' reliance on *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982). While Plaintiffs rely on *McCready* to assert that the risk of duplicative recovery is not present here, *McCready* is not on point. In *McCready*, a plaintiff-subscriber to an employee-sponsored health plan brought an antitrust suit against her insurer, alleging that the insurer engaged in an anticompetitive scheme by which it failed to reimburse her for out-of-pocket payments she made to her psychologist. The Supreme Court distinguished *Illinois Brick*, finding that the duplicative recovery concerns raised in that case were not manifest in McCready's facts, since she was seeking to recover payments to which she was contractually obligated under her plan with Blue Cross. *Id.* at 475, 102 S.Ct. at 2546. As such, her damages were to come from Blue Cross and there were no other entities in the chain of distribution to whom the damages would have to be apportioned. That stands in stark contrast to the instant facts, where several entities, including hospitals and insurance companies, potentially could claim damages from each joint sale by Defendants.

Beyond their attempt to distinguish *McCarthy*, Plaintiffs also argue that the "direct purchaser" rule cannot be applied, as it improperly grafts a reliance requirement on Subsection 1962(c). In support of this argument, Plaintiffs cite the Supreme Court's recent decision in *Bridge v. Phoenix Bond*, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008). This argument, while creative, miscasts the Supreme Court's holding. In *Bridge*, plaintiffs were bidders in public auction who filed a RICO action, alleging that a bidding competitor engaged in a pattern of mail fraud so to prevail in the auction. This alleged mail fraud occurred when defendants sent fraudulent notices to the county government through the mail relating to auctioned properties. The Court held that bidder-plaintiffs were not required to prove reliance on defendants' misrepresentations to the county as part of a civil RICO claim predicated on mail fraud. *Id.* at 2145.

*Bridge* has little or no bearing on the instant case. While Plaintiffs similarly assert a civil RICO claim with a mail fraud predicate, Plaintiffs' reliance on the content of the Defendants' mailed communications, *see* Compl. ¶¶ 65-67, is not at issue here. The "direct purchaser" requirement is predicated on the multiple liability and damage apportionment concerns discussed *supra*. Consequently, Plaintiffs' attempt to cast this case as falling under the reliance holding of *Bridge* fails.

After carefully considering the arguments put forth by both sides, it seems clear that under the facts as pled, Plaintiffs cannot escape the bar of the "direct purchaser" rule. To do so, Plaintiffs would have to plead that they bought their implants directly from Defendants. Since Plaintiffs have not so pled, they lack standing under these facts to bring their RICO claims. Accordingly, on this basis, Count One of the complaint is dismissed.

2.     *Pleading a Section 1962(c) Claim*

Even if Plaintiffs had standing to assert their Section 1962(c) claim, their substantive RICO claim would be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Section 1962(c) provides, in relevant part, that

[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...

18 U.S.C. § 1962(c).

To state a claim under Section 1962(c), a plaintiff is required to plead: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285 (1985). Defendants challenge the sufficiency of Plaintiffs' RICO pleadings. The Court agrees that Plaintiffs failed to adequately plead the requisite predicate acts.

Plaintiffs predicate their RICO claims on "acts indictable as mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343." Where plaintiffs allege mail and wire fraud[6] as the basis of a RICO violation, the allegations of fraud must comport with the Fed. R. Civ. P. 9(b) heightened pleading standard. *Saporito v. Combustion Eng'g Inc.*, 843 F.2d 666, 673 (3d Cir. 1988). For mail or wire fraud predicates, plaintiffs must plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct at issue. *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984). Plaintiffs may satisfy the pleading requirement by detailing the specific conduct alleged to be fraudulent along with the "date, place and time" that the alleged fraud occurred or by using some "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.*

Here, Plaintiffs have failed to plead, except in the vaguest of terms, "who made a misrepresentation to whom and the general content of the misrepresentation." *Lum v. Bank of America*, 361 F.3d 217, 224 (3d Cir. 2004). A representative allegation from the complaint states: "Defendants' use of the mails and wires to perpetrate its fraud involved thousands of communications, including, but not limited to ... communications, including financial payments, with the vendor and physician participants discussing and relating to the use of the products." Compl. ¶ 66. This contention, like the other mail and wire fraud allegations put forth by Plaintiffs, presents a vague and conclusory statement that fails the particularity requirement of Fed. R. Civ. P. 9(b). In *Saporito v. Combustion Eng'g*, 843 F.2d 666, 675 (3d Cir.1988), the Third Circuit held that similarly vague allegations failed to cross the heightened threshold of Rule 9(b). "Although the appellants' complaint does indicate the general content of the representations ('notice that C-E was in the process of planning and promulgating VSIP'), it does not indicate who the

---

[6] Plaintiffs also allege a third RICO predicate act – a violation of the Travel Act, 18 U.S.C. § 1952. The Travel Act prohibits the use of any interstate facility with the intent to: (1) distribute the proceeds of any unlawful activity; (2) commit any crime of violence to further any unlawful activity; or (3) otherwise promote, manage, establish, carry on, or facilitate the promotion of... any illegal activity. Section 1952(b) defines "illegal activity" as: gambling, extortion, bribery, arson, money laundering, or a failure to comply with financial reporting requirements. These facts clearly do not support a violation of the Travel Act.

speakers were ('defendants and/or persons acting under their direction and control') or who received the information ('certain C-E employees other than plaintiffs')." *Id.* The RICO pleading here suffers from the same deficiencies.

In an attempt to excuse their lack of particularized pleading as to the predicate acts, Plaintiffs argue that the court should be "sensitive" to the fact that application of Rule 9(b) prior to discovery "may permit sophisticated defrauders to successfully conceal the details of their fraud." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). While the Court acknowledges that Plaintiffs have not had the benefit of discovery to develop their claims more fully, to hold that their sparse allegations nonetheless satisfy Rule 9(b) would be to render the rule a nullity.

In addition to this, Plaintiffs group Stryker and Smith & Nephew together in their allegations of mail and wire fraud, making allegations collectively as to "Defendants." Compl. ¶¶ 64-68. Collectivized allegations that generally allege fraud as against multiple defendants, without informing each defendant as to the specific fraudulent acts he or she is alleged to have committed, do not satisfy Rule 9(b). *See, e.g. A-Valey Eng'rs v. Bd. of Chosen Freeholders*, 106 F.Supp.2d 711, 716 (D.N.J. 2000); *Mayor & Council of Borough of Rockaway v. Klockner & Klockner*, 811 F.Supp. 1039, 1060 (D.N.J.1993). Accordingly, Count One of the complaint also is dismissed on these grounds.[7]

       3.     *RICO Conspiracy Claim – Section 1962(d)*

For the reasons noted above, the Court has found Plaintiffs' Section 1962(c) claim deficient. As this Section 1962(c) claim is the only substantive RICO claim put forth, Plaintiffs' Section 1962(d) conspiracy count must be dismissed. *See Lighting Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.").

**C.    Count Three – Violation of State Consumer Protection Laws**

In Count Three of the complaint, Plaintiffs allege violation of thirty-seven state consumer protection laws, based on Defendants' violation of a statutory duty to refrain from unfair or deceptive acts in the promotion and sale of their products. Compl. ¶ 90. Plaintiffs, as noted *supra*, are residents of Iowa. Defendants move to dismiss this claim,

---

[7] Defendants raised additional grounds for dismissal of Count One in their motions. Having identified two separate bases for dismissal of the claim, the Court need not pass on the additional grounds briefed by Defendants at this time.

arguing that there is no private right of action under the Iowa Consumer Fraud Act.

      1.      *Choice of Law Analysis – New Jersey and Iowa*

As an initial matter, the Court notes that "[u]ntil the putative class is certified, the action is one between the [named plaintiffs] and the defendants." *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 659 (3d Cir. 1998). Accordingly, the complaint – and specifically this Count – must be evaluated as to these particular Iowa plaintiffs. It bears further noting that Plaintiffs have asserted only one state contact in their complaint – their residency in Iowa.

Federal courts sitting in diversity must apply the choice of law rules of the forum in which they sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Accordingly, New Jersey's choice of law rules govern the instant analysis. *See Heindel v. Pfizer Inc.*, 381 F. Supp. 2d 364, 370 (D.N.J. 2004).

New Jersey applies a flexible governmental-interest analysis as its choice of law rule. *Erny v. Estate of Merola*, 171 N.J. 86, 792 A.2d 1208, 1212-13 (N.J. 2002). The choice of law determination in New Jersey is not global, and operates on an issue-by-issue basis. *Erny*, 792 A.2d at 1213. New Jersey's governmental-interest analysis requires this Court to determine whether a conflict exists, and if a conflict exists, to "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." *Heindel v. Pfizer, Inc.*, 381 F. Supp 2d 364, 370-71, 374 (D.N.J. 2004) (quoting *D'Agostino v. Johnson & Johnson, Inc.*, 133 N.J. 516, 628 A.2d 305, 309 (N. J. 1993). New Jersey applies its own law in the absence of a conflict. *Rowe v. Hoffman-La Roche*, 189 N.J. 615, 621, 917 A.2d 767, 771 (N.J. 2007).

The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*, vests private citizens with a cause of action under defined circumstances to bring suit alleging, *inter alia*, deceptive or unconscionable business practices. It provides, in pertinent part: "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act ... may bring an action ... in any court of competent jurisdiction." N.J.S.A. 56:8-19.

Conversely, no private right of action exists under the Iowa Consumer Fraud Act. Iowa Code § 714.16(3)-(14). As the Iowa Supreme Court noted, "It is clear that, when state legislatures want consumers to enforce their consumer fraud acts, they expressly provide for that remedy in the statute. Iowa has not done that." *Molo Oil Co. v. River City Ford Truck Sales*, 578 N.W.2d 222, 228 (Iowa 1998). As such, a conflict exists

between New Jersey and Iowa's consumer protection laws, since New Jersey provides for a private right of action, while Iowa only allows suits under its consumer protection act to be brought by the state attorney general.

Having determined that a conflict exists between the laws of New Jersey and Iowa, the next step is "to identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." *D'Agostino v. Johnson & Johnson, Inc.*, 133 N.J. 516, 523 (1993).

Looking first at the policies behind each state's consumer protection laws, it is evident that both the New Jersey and Iowa legislatures were motivated by the desire to protect the public from deceptive business practices. *See Scibek v. Longette*, 339 N.J.Super. 72, 77, 770 A.2d 1242, 1245-46 (N.J. Super. Ct. App. Div. 2001) ("The Consumer Fraud Act was conceived to protect the consumer against imposition and loss as a result of fraud and fraudulent practices by sellers of goods and services."); *State v. Hydro Mag, Ltd.*, 436 N.W.2d 617, 620 (Iowa 1989) ("It was originally believed that a freely competitive economy was sufficient to protect buyers from fraudulent practices. ... Eventually, however, large scale marketing and manufacturing reached a point where government involvement became necessary. The Iowa Consumer Fraud Act was enacted in 1965 in order to protect the public from unfair and deceptive business practices.").

Next, the Court must examine the relationship of each state's contacts to the policies underlying the respective laws. *Heindel*, 381 F. Supp. 2d 364, 375 (D.N.J. 2004). "If a state's contacts are not related to the policies underlying its law, then that state does not possess an interest in having its law apply. Consequently, the qualitative, not the quantitative, nature of a state's contacts ultimately determines whether its law should apply." *D'Agostino*, 133 N.J. at 523. Here, the only contacts alleged by Plaintiffs are to Iowa. *See* Compl. ¶¶ 10-12 (asserting that the three named plaintiffs resided "at all times relevant to this action" in Iowa). While Plaintiffs assert that Stryker Orthopaedics is a New Jersey-based division, they make no specific allegation regarding any action in New Jersey. *See Rowe*, 189 N.J. at 629, 917 A.2d at 776 ("To allow a life-long Michigan resident who ... alleges injuries sustained in Michigan to by-pass his own state's law and obtain compensation for his injuries in this State's courts completely undercuts Michigan's interests, while overvaluing our true interest in this litigation."). Accordingly, it appears most appropriate that Iowa law govern the state consumer protection claims asserted by Plaintiffs. Since the Iowa legislature has not created a private right of action under the Iowa Consumer Fraud Act, Count Three of Plaintiffs' complaint must be dismissed.

2.  *Potential Application of Other State Consumer Protection Laws*

While Plaintiffs have alleged no contacts for themselves outside of Iowa, they have pled different states of residency for Defendants Stryker and Smith & Nephew.  As noted, *supra*, Stryker Corporation is a Michigan corporation, which has its principal place of business in Michigan.  Complaint ¶ 14.  Stryker Orthopaedics is a New Jersey-based division of Stryker Corporation, and Stryker Sales Corporation is a Michigan-based subsidiary.[8]  Compl. ¶¶ 13, 15.  Smith & Nephew is a Delaware corporation with its principal place of business in Tennessee.  Compl. ¶ 19.

Having determined that Count Three fails to state a claim under Iowa law, the Court need not address Plaintiffs' claim under the laws of the other states of residence listed for Defendants.  Nevertheless, because Count Three also fails under the laws of Michigan, New Jersey, Delaware, and Tennessee, we will discuss the matter briefly.

Plaintiffs' pleading fails under the consumer protection laws of each of these states, since it does not comport with Fed. R. Civ. P. 9(b).[9]  *See F.D.I.C. v. Bathgate*, 27 F.3d 850, 876 (3d Cir.1994) (dismissing plaintiff's New Jersey Consumer Fraud Act claim under Rule 9(b) where plaintiff failed to identify the speaker of the allegedly misleading statements and otherwise allege facts to support plaintiff's charges); *Metropolitan Property & Cas. Ins. Co. v. Bell*, 2005 WL 1993446, at *5 (6th Cir. Aug. 17, 2005) (noting that Tennessee Consumer Protection Act claim must be dismissed because not pled with specificity required by Rule 9(b)); *Homsey v. Vigilant Ins. Co.*, 496 F.Supp.2d 433, (D.Del. 2007) (holding that pleading requirements of Rule 9(b) apply to claims brought under Delaware Consumer Fraud Act); *Williams v. Scottrade, Inc.*, 2006 WL 2077588, at *7 (E.D. Mich. July 24, 2006) (dismissing Michigan Consumer Protection Act fraud claim for failure to comport with specificity requirement of Rule 9(b)).  Consequently, even if the conflicts analysis were performed between New Jersey and one of these states, the result would be the same – dismissal of the claim asserted in Count Three.

### D.    Count Four – Unjust Enrichment

In Count Four of the Complaint, plaintiffs assert an unjust enrichment count, claiming that Defendants received "significant financial benefits from Plaintiffs ...

---

[8] Defendants Stryker Orthopaedics, Stryker Corporation and Stryker Sales Corporation will be referred to collectively as "Stryker."

[9] *See* Point II.B.2.

through improper, illegal, and covert practices that unfairly increased the cost of hip or knee implant surgery to Plaintiffs." Compl. ¶ 104.  Defendants move to dismiss.

1.      *Unjust Enrichment Claim Under New Jersey Law*

When a district court's jurisdiction is predicated on diversity of the parties, or when the court hears a state-law claim based on its supplemental jurisdiction, the court must determine whether, under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a matter is substantive or procedural. *Simmons v. City of Phila.*, 947 F.2d 1042, 1085 (3d Cir.1991).  If the matter is substantive, as it is here, the court must apply the substantive law of the forum state. *Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d Cir. 2008).  Here, neither Plaintiffs nor Defendants have raised a choice of law issue.  As such, the Court will apply the law of the forum state, New Jersey, in weighing Defendants' motion to dismiss the unjust enrichment claim asserted in Count Four.

In New Jersey, "[t]o establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 641 A.2d 519, 526 (N.J. 1994). Furthermore, "[t]he unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *VRG Corp.*, 641 A.2d at 526.

Plaintiffs have not pled that Stryker or Smith & Nephew benefitted from the co-insurance payments made by Plaintiffs to their insurers.  Plaintiffs simply represent that they made these payments to their insurers.  While Plaintiffs are correct that those co-insurance payments are to their detriment, the payments are not a detriment accruing to Defendants' benefit.  Accordingly, they cannot be the foundation of an unjust enrichment claim.  In addition, Plaintiffs have not pled that they expected renumeration from Stryker or Smith & Nephew at the time they tendered their co-insurance payments.

Even construing the complaint in the light most favorable to Plaintiffs, it appears to the Court that they have failed to state an unjust enrichment claim under New Jersey law.  As such, Count Four of the complaint is dismissed.

## III.    CONCLUSION

For the foregoing reasons, the motions to dismiss filed by Defendants Stryker Orthopaedics, Stryker Corporation and Stryker Sales Corporation and Defendant Smith & Nephew, Inc. are **GRANTED**.  Plaintiffs' complaint is **DISMISSED WITH PREJUDICE.**

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**
